The next case this morning is 523-0085, People v. Waldrop. Arguing for the appellant is Christina O'Connor. Arguing for the appellee is Michael Lennox. Each side will have 10 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please note, only the clerk of the court is permitted to record these proceedings today. Good morning, counsel. Good morning. How are you all? I'm doing well. How are you? I think we're okay down here. I hope all is well with you all. Ms. O'Connor, are you ready to proceed? Yes, your honor. Thank you. Then go right ahead. May it please the court. Counsel, my name is Christina O'Connor. I'm an assistant appellate defender at the Office of the State Appellate Defender, and I represent Mr. Alfred Waldrop in this matter. As an initial note, this case is back on remand after initial crankle inquiry that was ordered by this court. There are numerous issues raised in the brief, but today I would like to focus on how counsel's ineffectiveness allowed the state to bolster RM's testimony with inadmissible hearsay and other crimes evidence that should have never been admitted at trial. However, if this court has any questions about the juror issue, the state's misstatement of evidence, and the crankle arguments raised in the brief, I would be happy to answer those questions. First, before we discuss the issues, I think it's important to go over the evidence about the one count of predatory criminal sexual assault in this case that was alleged to have occurred on or about February 17, 2018. RM testified that this assault took place in the living room, on the chair, with a jacket, when Linda Waldrop, Mr. Waldrop's partner, and RM's grandmother slash guardian was at the store, and RM had also said that this happened when Linda was checking the mail. But during her CAC interview, RM stated that the last time this had happened was in the bedroom, and Mr. Waldrop had touched the inside of her badge. At trial, RM admitted that her story about what had happened had changed. Linda testified that RM had not been alone with Mr. Waldrop the week prior to her outcry, she had taken RM to the store with her, and she had provided a receipt to Detective Mullins to corroborate her story. There was no physical evidence of abuse, despite six years of allegations of abuse. There were no prior outcries, and RM's DNA that was found on Mr. Waldrop's jacket could have been deposited at any time. There was testimony that RM wore this jacket frequently, and the jurors even sent a question asking about this, when RM's DNA could have been deposited at a different time than Mr. Waldrop's semen. So even they pondered whether or not these were deposited at the same time. RM's stepfather also never had any concerns about RM living with Mr. Waldrop, nor did she ever tell him or Linda that she did not want to live with her grandparents anymore, or that she was afraid of Mr. Waldrop. So getting into this first issue of counsel's ineffectiveness with Section 115.10. Section 115.10 exists to test hearsay in cases like these for its reliability before it's presented to the jury. And here, there was no hearing, and counsel's only objection to the state's motion was that the evidence was hearsay, which essentially admits to no objection at all, because the evidence that is admitted in 115.10 situations is hearsay evidence. The failure of a 115.10 hearing in this case was problematic for several reasons. First, in regards to Dickerson's interview with RM, which started all of the allegations in this case, there is nothing in the record about the substance of the conversation that was had between the two of them, or whether or not there was any encouragement on behalf of Dickerson for RM to accuse Mr. Waldrop. And that is concerning because Dickerson stated that RM used terminology such as sexually abusing and raping her, whereas in the CAC interview, which happened a few days later, RM's terminology was vastly different, stating that Mr. Waldrop put his pee-pee in her vag. And this is the same type of terminology that RM also used at trial. Also, Detective Mullins and Jamie Wells, who is the DCFS investigator, were allowed to testify about statements that RM made at the house, that the abuse happened at the deep freezer, living room, and the bedroom. Mullins and Wells weren't even mentioned in the 115.10 motion, so this evidence should have never been admitted, and counsel should have made an objection, which would have been granted. This testimony would also not fall under the course of the investigation exception, because while an officer may testify that a conversation took place, the substance of the conversation would be objectionable as hearsay if the contents are offered to prove the truth of the matter asserted. And, of course, an officer can testify regarding the steps they took in the investigation, and in this case, why they took the jacket to test it, but that was all that was needed here. So if the state wanted to introduce the other statements that were made, it should have been subjected to a 115.10 hearing. And this court should also reject the state's suggestion that Mullins and Wells were included in its 115.10 motion, because it included language in its motion that it intended to introduce out-of-court statements that were made to one another. That is absurd and defeats the purpose of why Section 115.10 motion and proceedings exist. It needs to be identifiable statements so the court can test the reliability before the jury hears it. There was also testimony that RM was on medication, and a 115.10 hearing could have been the perfect time to divulge into whether any of those medications affected her memory or recall of the events. And there is also an issue of Angela Newlin, the CAC interviewer, suggesting to RM that this abuse happened once a week, which RM later adopted and caused the next issue that I'll be talking about, which counsel failed to properly object to, which is the Section 7.3 Other Crimes Evidence. At trial, RM was allowed to testify that this abuse happened once a week for six years, which equals approximately 300 additional vague allegations of unreported, uncharged sexual misconduct. Section 7.3 allows for propensity evidence in these types of cases, but they must be specific instances of conduct. So in this case, Mr. Waldrop was placed in a truly impossible position of attempting to account for his whereabouts every day for six years and having to defend against these vague allegations. The state also discussed all of these allegations together during his closing argument, which heightened the risk that the jury could have been tempted to find Mr. Waldrop guilty because they believed he did something, but not necessarily the act that he was actually charged with here in this case. The law is clear that this Other Crimes Evidence may not become the focal point at trial, and that is what happened here. Now, Mr. Waldrop is not suggesting that the state was not allowed to introduce any propensity evidence. They just have to be specific instances of conduct. For example, in the case Ars, which is cited too in the reply brief, the court discusses how the propensity evidence in that case was admissible because the two patients testified as to the Other Crimes Evidence, and they included some specific dates or at least identifiable dates. And that's the issue here, which was also addressed in Cardamon as well. If this evidence, if counsel had objected on this basis and the sheer amount being too prejudicial, this evidence would have been properly excluded. And the issue in this case is that there was just too much. Now, courts have not defined an exact limit to how much is allowed under 7.3, but there are outer bounds where the volume is just overly prejudicial, too persuasive, and just too powerful to ensure there is a fair trial, which is what happened here, especially given how close the evidence actually is for the actual allegation that Mr. Waldrop was charged with. It's also worth noting that no instruction was given to the jury on what to do with this evidence, and counsel failed to request one as well, such as, for example, IPI 3.14, which doesn't specifically single out propensity evidence, but it would have been better than nothing and at least would have given the direction to the jury on something on how to handle this Other Crimes Evidence. Therefore, Mr. Waldrop was denied a fair trial due to counsel's ineffectiveness based on the arguments made today and in the briefs. I ask this court to reverse his conviction and remand for a new trial, or alternatively, reverse the judgment of this trial, court, and remand for further proceedings with the appointment of new counsel. Does the court have any questions? Justice Vaughn? Justice Moore? No questions. You referenced that there was no 115-10 hearing held, but the state filed a motion to admit certain evidence under 115-10 on November 28th. On December 3rd, the docket entry says motion hearing conducted, motion taken under advisement, Exhibits 1 and 2 to be examined by court in camera. And then on December 5th, the docket entry says motion to admit per 725-115-10 granted. So, it seems to me like there was a 115-10 hearing. Yes, Your Honor. So, when I say that there wasn't a hearing, the court did have addressed the motion in court with the attorneys and the state proffered the two exhibits, but there was no testimony presented. All of the issues that I previously discussed were not brought up, and there was no testimony or anything. It was just the court presented the CAC interview and two documents, one of which was, I believe, two other minor statements that weren't even used at trial, so they're not relevant to this case at the moment. And so, there was, in a sense of that being an actual hearing, there wasn't one here in this case, because right after that, then it just moved on to the motion to suppress. So, there was Detective Mullins and then Wells testified, but they didn't talk about these other statements that RM stated. This was specifically about whether or not they had permission to be inside the house and even get the jacket. So, any testimony that was presented was in regards to that motion to suppress hearing. This hearing on the 115-10 motion was very, very short, and it was essentially not even hearing at all. But the court had the exhibits, the videos, the CAC interview, and took those, says they examined to be examined in camera. It did examine the CAC interview, but again, there was nothing about Detective Mullins or Wells, Angela Newt, or, I apologize, Your Honor, there was also nothing about Dickerson either that was presented at all. So, we have all of these issues with things that were not presented, and there was essentially no hearing that were arguing for that. With regard to the propensity evidence, most of the cases that limit that have multiple victims. One of the cases, there were 14 victims, and that's improper to testify, but when you have one victim telling multiple episodes, that seems to be less troublesome, would you say? I don't object to that, but it would be less that's distinguishable from where you have multiple victims or multiple people testifying. It's kind of a piling on here where you've got one person testifying about their relationship with the defendant. That seems a little more of a gray area. Your Honor, I believe in this case, again, that the state, it's not that they weren't allowed to present any propensity evidence, and maybe that they needed some for RM to help with her story or allegations. But in this case, the issue is that there were six years, which amounted to 300 vague allegations. Mr. Waldrop was placed in this impossible position of having to defend where he was every day for six years, and there was nothing to suggest possibly when these vague allegations happened. It was just possibly on the deep freezer or in the bedroom, and so he just wasn't able to actually defend against these, and we have one charge here. And then the state, during closing arguments, kind of just used all of this together and said that RM was being abused for six years. The problem here is just the sheer volume. Mr. Waldrop wasn't able to defend against all of this. And then there's a real risk that the jury could just find that, well, Mr. Waldrop must have done something, so we're going to convict him, not necessarily what he was actually charged with. So that is our argument here in this case. Thank you. Justice Moore? No questions. Well, thank you, Ms. O'Connor. Obviously, you'll have your time for rebuttal. Mr. Lennox, go right ahead. Thank you, Your Honors. Good morning, opposing counsel, Your Honors, and may it please the court. My name is Michael Lennox, and I represent the state in this matter. This court should affirm the defendant's conviction of predatory criminal sexual assault where the defendant was not provided in effective assistance by trial counsel, and the lower court appropriately did not appoint him new counsel following a crankle hearing. Your Honors, as this court is well aware, the test for ineffective assistance of counsel comes from Strickland and requires the defendant show that his counsel's assistance fell below an objective standard of reasonableness and that prejudice resulted. Generally, matters of trial strategy are immune from ineffective assistance of counsel claims, and what matters to object to and when to object falls under what is considered trial strategy. The failure to object may be considered a matter of trial strategy and does not establish substandard performance, and under Strickland, the court is meant to view an attorney's performance while making, quote, to eliminate the distorting effects of hindsight, unquote, and view the performance, quote, from counsel's perspective at the time, unquote. The United States Supreme Court went on to say that a court must indulge a strong presumption that the counsel's conduct falls within the wide range of reasonable professional assistance. Even upon a professionally unreasonable error by counsel, the defendant must show prejudice or that the error actually had an adverse effect on the defense. The United States Supreme Court stated that it's not enough to show a conceivable effect on the outcome of the proceeding, but the defendant must show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Courts must consider the totality of the circumstances and defer to the trial court's finding of fact. Under the defendant's first issue of ineffective assistance, there are four claims. First, that the trial counsel should have objected to the victim's testimony that she was sexually abused once a week for six years. Second, that counsel trial should have objected to the, quote, lack of a 11510 hearing. Third, that counsel should have objected to the state's closing argument rebuttal. And fourth, that counsel should have challenged on the basis of bias to juror Wesley and should have asked the entire veneer to be discharged due to the comments of potential jurors Stinson and Bradbury. Your honors, in referencing this other crimes argument, as mentioned in my brief, the defendant's reliance on Cardamon in this case is misplaced. And the defendant's further citation to Arzee in his reply actually further evidences that fact. As Justice Vaughn noted, in Cardamon, the court in part decided the issue of whether the trial court abused its discretion by finding the prejudicial effect did not weigh the probative value where the other crimes evidence of the testimony of 14 complainants to prove intent when intent was not an issue. Most importantly, to the determination here, the court there stated, quote, we agree that a single girl's testimony as to a single act of misconduct would paint an inaccurate picture of the defendant's conduct as to that girl. Still quoting here, however, the jury heard 14 complainants discuss relatively similar acts of charge misconduct, unquote. In his reply, the defendant had the opportunity to address this important distinction, yet chose instead to say I misconstrued Cardamon and cited yet another case with multiple victims, people versus Arzee. The citation to Arzee further evidences my point. In Arzee, the defendant was his victim's physician. And as opposing counsel noted, there was some time that was able to be given there. That was because they were doctor appointments. All the victims were adults with MS being the primary victim for the case and NRBS being victims testifying to the defendant's other crimes. In Arzee, the court discussed the fact that the defendant was seeking to compare his case to Cardamon. The court in its discussion of Cardamon stated, quote, the appellate court noted that unlike where the trial court might admit other crimes evidence as it pertains to one or even two victims, the court here found admissible numerous acts alleged by 15 victims, unquote. And citing to another case that cited to Cardamon later as a, quote, extreme case, unquote. Once more, Cardamon and Arzee are distinguishable here where there are multiple testifying victims. And in both cases, the court makes clear that a single victim testifying to a single act, quote, could paint an inaccurate picture of the defendant's conduct as to that girl, unquote. Also, as previously stated, the defendant cites no authority demonstrating how the victim here failed a 115 7.3 E or failed that statue and suggests an impossibly high standard for victims, especially minor victims, to me. The victim described the frequency of the sexual assault being roughly once a week from 6 to 12 years old. They described where the abuse would happen. Various places in the house, including a living room chair and the bedrooms on the bed and on the deep freeze and how it would happen. Vaginal penetration with the defendant's penis while on the living room chair. A flannel jacket was used to conceal the abuse. The defendant's demand that the victim provide specific times suggests that every victim keep a detailed log of abuse they endured so that one day their abuser may see justice for their crimes. Further, the specificity of the victim's claim goes to the weight of the testimony and not the admissibility. Also, despite the defendant's assertion, the evidence here is not closely balanced and was overwhelmingly supportive of a conviction. The victim told multiple people about the sexual abuse she was subjected to. The defendant's semen was found in multiple stains on the flannel jacket the victim stated he used to conceal them while he raped her. The victim's DNA could not be excluded from the same jacket and the victim was very clearly distressed in her Child Advocacy Center interview upon any reasonable review of the footage. The defendant asserts that I, in his reply, that I ignored Linda Walldrop's testimony. I did not. Linda is the victim's grandmother and defendant's wife, as opposing counsel stated. On the record, her memory appeared to be inaccurate. She did not remember the frequency of the defendant's ex-wife's visits and she did not remember where the ex-wife lived. Beyond that, she stated that the victim quote, always wanted to go with her, unquote, her being Linda, when faced with the prospect of being left alone home with the defendant. And she shifted her testimony from not being able to think of any times the defendant and the victim were left alone together to the two being alone together, quote, two or three times a month, unquote, which just so happens to be very close to the roughly once a week number that the minor gave. Also, trial counsel addressed this issue in the Krankel inquiry, stating that she filed a motion in Lemony regarding these statements and also objected to the forensic interview being introduced, but she was overruled. Finally, as with all of the defendant's arguments concerning a failure to object, objecting is a matter of trial strategy and therefore presumed to constitute effective assistance. Your honors, just briefly in referencing the 1-15-10 hearing, here not only was there a brief hearing on December 3rd, 2018, as your honor Justice Vaughn addressed, that addressed the state's motion to admit hearsay pursuant to 1-15-10, but the statements themselves were not hearsay. First, not only was there a 1-15-10 hearing, but a subsequent hearing pursuant to section 1-15-7.3 was regarded by both the state and the trial defense attorney as falling within the 1-15-10 motion and the hearing on 1-15-7.3 focused on the time, content, and circumstances of the statements as required by 1-15-10. In said hearing, trial defense explicitly did not object to the proper statements made by Newland, Dickerson, Casey, and Hale by the victim, and your honors, I see my time is up, so I'll rest on my brief for the rest. You can go ahead and finish your thought there. Okay. Beyond this, however, the fact that Wells and Mullen's statements, the fact is that Wells and Mullen's statements do not constitute hearsay because they were not offered to prove the truth of the matter asserted, yet rather, they were to pick a description of the investigation regarding the statements of Wells and Mullen's. In the interest of time, I won't read it out to your honors, but I would ask this court to direct its attention to the transcripts 570 to 574 and 588 to 593 to make that determination. And with that, thank you, your honors. Thank you, Mr. Lennox. Before we let you go, Justice Vaughn or Justice Moore, do you have any questions? No question. No, no other questions. Thank you, Mr. Lennox. Ms. O'Connor, go right ahead with your rebuttal. Thank you, your honor. So first, counsel talked about counsel's objections and trial strategy. Here, for the 115.10 motion, counsel's objection was that it was hearsay. That is not a sound trial objection. 115.10 evidence is hearsay. And for the 7.3 motion, counsel's objection was that just no evidence that wasn't already disclosed to her when it should have been something along the lines of specific incidences. Again, this is not sound trial strategy. So there was no sound trial strategy here. Counsel's failure resulted in Mr. Waldrop not having a fair trial. Second, with the other crimes evidence with 7.3, Mr. Waldrop is not suggesting that any victims are required to keep detailed logs. The problem here is that Mr. Waldrop, again, was placed in an impossible situation to defend when there is one charge in this case for a specific date against 300 vague allegations that are not specified. And we are not arguing that there has to be specific dates, just something identifiable. So, for example, there's another case that we cited to Perez, which talked about cardamom and the outer bounds of 7.3. And in that case, the court found that the trial court did not abuse its discretion. The defendant was charged with two incidents. Again, there were two victims. But one of the complainants testified about an incident that happened for other crimes that was after school in the fall of 2007. So at least there's some identifying dates there. And that's kind of what we're arguing here. But with the other complainant in that case, they testified to about 20 incidences of touching. And the appellate court noted that that was slightly more complicated, but still found that the evidence in that case to be more probative than prejudicial, and it was not unduly inflammatory or excessive. Again, 20 compared to 300 is vastly different. And that's the issue that we have here. We are not suggesting that RM was not allowed to present any other crimes evidence so that she could not have said that these other allegations happened. But 300 over a six-year period where Mr. Waldrop was placed in this impossible position to defend against, and the state basically combined all of this together and argued this in closing arguments, where the jury just had to believe that Mr. Waldrop did something. And that is what we are arguing here, that it was just too prejudicial. It was too much. Additionally, the evidence here is closely balanced. There's issues with the once a week. That was suggested to RM by Angela Newland. She adopted that. That was not RM initially stating that. The initial outcry that happened, we have no clue how that came about because that was not divulged into by the trial court through 11510. We have no idea what happened with Dickerson's conversation with her. There are multiple issues here. RM's story did change a lot throughout the case. The jury was even questioning whether or not the DNA could have been deposited at different times on this jacket. Linda Waldrop's testimony was not, her memory wasn't impaired or anything. There was testimony that there were people coming to visit all the time. And while RM did want to go to the store with her, there was no suggestion that she told her stepfather who agreed to give guardianship to the Waldrops that she did not want to stay with them. And Linda stated that there was no indication that RM did not want to be there, felt uncomfortable. So the evidence is close here. And the issue is that there are so many other crimes evidence things here. And there are issues with the hearsay evidence under 11510. And if counsel would have presented proper objections to these, as well as the juror issues and the state's misstatement of evidence, then if all of these things would have been corrected, Mr. Waldrop would have had a fair trial. Does the court have any other questions? Justice Vaughn or Justice Moore? No other questions. Do you think the trial court conducted an adequate crankle hearing with regard to Wells and Mullins, failure to object to their hearsay testimony? No, Your Honor, simply for the arguments that I've raised today and in the briefs. Because the court rejected that based on the investigatory process. And we disagree with that. I'm not sure I buy Mr. Lennox's argument that it was not hearsay because it was part of how the police conducted their investigation. But how does the defendant show prejudice given that the other statements were admissible under 11510? I apologize, Your Honor. Can you rephrase your question? I didn't quite understand. Well, the other statements, I understand you don't believe that 11510 hearing occurred, but it looks to me like on December 3rd, 2018, one did occur. Some of the statements were found admissible under that, that the 11510 motion did not list Wells and Mullins' statements. So I'm not sure they were covered under 11510 hearing. But how does the defendant show prejudice by his attorney's failure to object to those statements when the other statements were admitted? How does he show prejudice? Well, again, with the evidence, this evidence is closely balanced here and with the other crimes evidence. So we also argued, I believe, we argued cumulative error. So there's a lot of issues here that we would say this all goes together. Thank you. Justice Moore? No questions. Well, counsel, thank you. We will obviously take the matter under advisement. We will issue an order in due course.